United States District Court
Southern District of Texas
**ENTERED**
May 14, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| STORE MASTER FUNDING XXIX, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | Case No. 4:23-cv-01194 |
| | § | |
| TRIANGLE CAPITAL | § | |
| PROPERTIES, LLC, *et al.*, | § | |
| *Defendants*. | § | |

## MEMORANDUM AND ORDER

This is a dispute over a rental agreement for commercial property.[1] Plaintiff STORE Master Funding XXIX, LLC, has filed a motion for summary judgment. ECF No. 19. Pending before the Court is Defendants Triangle Capital Properties, LLC's ("Triangle"), and Royal Texas, LLC's ("Royal") motion to continue, ECF No. 21. The question presented for resolution is whether Defendants are entitled to a continuance to conduct additional discovery, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, before responding to Plaintiff's motion for summary judgment. The Court held a hearing on April 25, 2024, attended by counsel for all parties. As stated on the record at the hearing, and after having thoroughly reviewed

---

[1] The district judge to whom this case is assigned referred the case to this Court pursuant to 28 U.S.C. § 636(b)(1). Order, ECF No. 30. A motion to continue is non-dispositive and appropriate for resolution through issuance of an order. *See SMH Enterprises, L.L.C. v. Krispy Krunchy Foods, L.L.C.*, No. CV 20-2970, 2021 WL 4460522, at *5 (E.D. La. Sept. 29, 2021).

the briefing,[2] the evidence, and the applicable law, the Court concludes that Defendants have met their burden under Rule 56(d), and the motion to continue, ECF No. 21, will be granted.

## Background

On April 26, 2016, Plaintiff and Triangle executed a long-term lease for twenty-four commercial properties around the Houston area. *See* ECF No. 19-2. At the same time, Royal executed a guaranty agreement in connection with the lease. ECF No. 19-3. Defendants then entered into franchise agreements with nonparty Cajun Global, LLC ("Cajun"), to operate Church's Chicken franchises at the properties. ECF No 19-1 ¶ 4. Cajun terminated those franchise agreements on March 21, 2022. *Id.* ¶ 8. Litigation between Defendants and Cajun regarding the alleged wrongful termination is pending in Houston and Atlanta. ECF No. 22-1 ¶ 4. After several unsuccessful attempts to remodel and locate a new franchisor, *id.* ¶¶ 6-9, Defendants ceased paying rent on all properties in December of 2022, ECF No. 19-1 ¶ 11. Plaintiff took possession of the properties on March 29, 2023. *Id.* ¶ 17. Plaintiff filed suit the following day, seeking unpaid past rents and future rents due under the lease agreement, among other damages. *See* Compl., ECF No. 1.

Discovery in this case proceeded as follows. On June 5, 2023, Plaintiff served its initial disclosure statement on Defendants. ECF No. 21-2. Plaintiff identified

---

[2] Plaintiff filed a response. ECF No. 29.

"Documents relating to Plaintiff's efforts to mitigate damages following Defendants' breaches of the Lease and Guaranty" as a category of information in its possession that may be used to supports its claims. *Id.* at 5. On July 31, 2023, Defendants served its first set of interrogatories and document requests to Plaintiff. ECF No. 21-3. This included the following requests related to mitigation:

> Interrogatory No. 2: Identify for each of the 24 Properties:
>
> (a) All efforts made by Plaintiff or by STORE Master Funding VIII, LLC since March 22, 2023—the date Defendants surrendered possession of 22 of the 24 Properties—to comply with the landlord's statutory duty under Texas Property Code Section 91.006(a) to mitigate damages;
>
> (b) All advertisements or listings for lease of each of the 24 Properties since March 22, 2023; and
>
> (c) All Communications, agreements and listings of each of the 24 Properties with a broker or real estate agent or leasing agent since March 22, 2023.

*Id.* at 3. Defendants served requests for production on the same topics. *Id.* at 4. On September 6, 2023, Plaintiff responded:

> Plaintiff responds that [*sic*] has sought to mitigate its damages by both leasing and/or selling the Properties. However, to date, Plaintiff has not entered into any transactions to sell or lease the Properties. Plaintiff will supplement its response when it enters into any sale or lease transactions.

ECF No. 21-4 at 7. Plaintiff then supplemented its response on November 22, 2023:

> Plaintiff states that it has advertised twenty three (23) of the twenty four (24) Properties by listing those Properties on CoStar and by sending an email with a list of STORE Capital's properties available for lease and sale, including the twenty three Properties, to its national network of

> nearly 600 third-party brokers commencing in March 2023. . . . STORE
> did not advertise the Property located at 6405 Telephone Road,
> Houston, TX 77061 because STORE received an offer from a party
> made an offer to STORE after seeing that the Property was vacant.

ECF No. 21-5 at 7. Based on those responses, Defendants did not request any further

discovery and took no depositions. *See* ECF Nos. 21-1, 29-1. Plaintiff did not further

supplement its responses on mitigation or produce any additional documents through

the close of discovery on December 29, 2023.

On December 31, 2023, Plaintiff and Church's Houston Holdings, LLC

("Church's"), executed a replacement lease covering all 24 locations. ECF No. 19-

1 at 5. Plaintiff did not immediately produce this replacement lease to Defendants in

discovery as a supplemental disclosure. ECF No. 21-1 ¶ 6. Instead, Plaintiff first

revealed the replacement lease by attaching excerpts of it as Exhibit 12 to its motion

for summary judgment on January 31, 2024. ECF No. 19-13. Plaintiff has not

otherwise produced the replacement lease or any communications or negotiations

with Church's pertaining to the replacement lease. *See* ECF No. 21-1 ¶ 8.

## Analysis

### A.    The Standards for a Rule 56(d) Motion to Continue.

A court may defer ruling on a motion for summary judgment and allow more

time for discovery if the non-moving party "shows by affidavit or declaration that,

for specified reasons, it cannot present facts essential to justify its opposition." FED.

R. CIV. P. 56(d). "Rule 56(d) motions for additional discovery are broadly favored

and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (cleaned up). The Fifth Circuit has generally framed the non-moving party's burden under Rule 56(d) as requiring a two-part showing that: (1) "additional discovery will create a genuine issue of material fact"; and (2) the non-moving party "diligently pursued discovery." *Bailey v. KS Mgmt. Services, L.L.C.*, 35 F.4th 397, 401 (5th Cir. 2022) (quotations omitted).

To satisfy the first showing, "the non-moving party must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (quotation omitted). A court must "generally assesses whether the evidence requested would affect the outcome of a summary judgment motion" *See Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 423 (5th Cir. 2016). However, the non-moving party "may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts." *Id.* (quotation omitted).

The second showing, requiring that the non-moving party "diligently pursued discovery" is not a demanding burden, and it will usually be satisfied unless "the movant failed to conduct discovery during a period in which it was permitted to do

5

so." *Bailey*, 35 F.4th at 404. If the party never asked for a certain category of documents or "did not move to compel production of these documents during the discovery period," then the party has not acted with diligence. *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017). Courts have also found this burden met where the moving party waited until the close of discovery to produce relevant documents. *See Holcombe v. Advanced Integration Tech.*, No. 4:17-CV-522, 2018 WL 4908266, at *3 (E.D. Tex. Oct. 10, 2018) (granting Rule 56(d) motion for due to disclosure of 1,200 pages of documents shortly before dispositive motion).

## B.    Defendants Have Adequately Identified What Additional Discovery Is Necessary and How It May Affect Their Mitigation Defense.

Defendants request a continuance to conduct additional discovery regarding the replacement lease before responding to Plaintiff's motion. Defendants argue that "*when* Plaintiff provided the lease to Defendants and *who* the new lessee is make discovery related to it and the negotiations even more relevant." ECF No. 21 at 5. This is because Defendants are currently engaged in litigation with Cajun regarding its termination of Defendants' franchise agreements. *Id.* at 3. Cajun unsuccessfully attempted to force Defendants to assign the commercial lease with Plaintiff to Cajun on previous occasions. *Id.* Further, because Church's and Cajun both list the same Atlanta address and both operate Church's Chicken franchises, Defendants believe that the two entities are one and the same. *Id.* at 5. The timing of the replacement lease—executed only two days after the close of discovery in this case—likewise

6

raises Defendants' suspicions, as it is unlikely the replacement lease for twenty-four properties was negotiated in two days. *Id.* at 6. Defendants thus propose limited topics for discovery, including negotiations and communications with Church's, drafts and other mitigation-related documents, and discovery into any connections between Church's and Cajun. *Id.* at 17-18. Defendants further attach a declaration of counsel explaining how the replacement lease is directly relevant to their failure-to-mitigate defense, and how Plaintiff never disclosed anything pertaining to the new lease despite Defendants' requests for all mitigation efforts. ECF No. 21-1.

In response, Plaintiff primarily argues that the lease negotiations are irrelevant to mitigation. ECF No. 29 at 10-11. Plaintiff identifies other types of evidence that may be used to show a failure to mitigate, such as "the availability of a different tenant, or how much a new tenant would have paid." *Id.* at 10 (quoting *Levertov v. Hold Properties, Ltd.*, No. 11-11-00284-CV, 2014 WL 887225, at \*5 (Tex. App.—Eastland Feb. 27, 2014, no pet.)). Plaintiff thus insists that its advertisement efforts suffice to establish mitigation and nothing further need be produced. *Id.* at 11. However, Plaintiff cites no authority indicating that lease offers, communications, or negotiations are irrelevant to mitigation as a matter of law.

Commercial landlords have "a duty to mitigate damages if a tenant abandons the leased premises." TEX. PROP. CODE § 91.006(a). The tenant bears the burden of proof on failure to mitigate. *Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*,

948 S.W.2d 293, 299 (Tex. 1997). The "duty to mitigate requires the landlord to use objectively reasonable efforts to fill the premises" with a replacement tenant "suitable under the circumstances." *Id.* "The reasonableness of the landlord's efforts to avoid damages is an issue for the fact finder." *White v. Harrison*, 390 S.W.3d 666, 675 (Tex. App.—Dallas 2012, no pet.). Because efforts to mitigate are measured by an objective standard, lease negotiations with replacement tenants may be used to establish the reasonableness of mitigation and damages. *See, e.g.*, *Landry's Seafood House-Addison, Inc. v. Snadon*, 233 S.W.3d 430, 436 (Tex. App.—Dallas 2007, pet. denied) (reviewing evidence of lease offers received to determine reasonableness of landlord's acceptance of lower offer as part of mitigation defense).

The Court is unpersuaded that Plaintiff's lease negotiations are irrelevant. Indeed, Plaintiff attached excerpts of the replacement lease to its motion for summary judgment as evidence of its mitigation efforts.[3] ECF No. 19-13. Moreover,

---

[3] Defendants, relying on *Holcombe*, argue that the first part of the Rule 56(d) test is satisfied where documents never produced in discovery are attached to the motion for summary judgment and central to the arguments raised therein. ECF No. 21 at 14. Plaintiff does not attempt to distinguish *Holcombe*. While not squarely on point, *Holcombe* suggests that the timing of a party's production of relevant documents is a factor, as "it would be manifestly unjust, and potentially very inefficient and costly, to grant summary judgment without allowing the opposing party a full opportunity to respond based on a procedural technicality." 2018 WL 4908266, at *2. But this equitable balancing is the result of Rule 1, not Rule 56(d). *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 337 (5th Cir. 2017) (directing district court on remand to "construe the procedural rules with a preference toward resolving the case on the merits and avoiding any dismissal based on a technicality" (citing FED. R. CIV. P. 1)). The Court nonetheless agrees that that the requested discovery is an equitable means of curing Plaintiff's late disclosure. Moreover, Plaintiff never explains how it may rely on the replacement lease when it was never produced in discovery. *See* FED. R. CIV. P. 37(c). Because Plaintiff's failure to produce those relevant documents in discovery is what necessitates additional discovery, Plaintiff cannot complain of any prejudice it may face as a result.

the timing of Church's offer is highly relevant—if Plaintiff was aware of Church's or Cajun's interest in leasing the properties and received an offer prior to filing suit but did nothing for a year, such delayed acceptance likely would be unreasonable.[4] Nor is it difficult for the Court to imagine how communications between Plaintiff and Church's may be relevant to mitigation or other potential claims in this case, where Defendants contend Church's is an alter ego of Cajun, whom Defendants have sued for wrongful termination of the franchise agreement. ECF No. 21 at 5-7. The Court therefore concludes that the lease negotiations and other communications with Church's likely exist, are relevant to mitigation, and may create a fact issue.

## C.   Defendants Pursued Discovery with Diligence, Whereas Plaintiff Failed to Fully Disclose Its Mitigation Efforts.

Defendants argue they diligently requested discovery on Plaintiff's efforts to mitigate through timely served interrogatories and requests for production. ECF No. 21 at 14. Plaintiff responds that Defendants were not diligent in discovery in other respects.[5] ECF No. 29 at 13. Plaintiff contends that its interrogatory answers were

---

[4] Counsel suggested at oral argument that Plaintiff was aware of Defendants' dispute with Cajun and that Defendants provided Plaintiff with Cajun's contact information prior to filing suit. These facts were not alleged in the attached declaration, *see* ECF No. 21-1, so the Court does not consider them in reaching its ruling. Nonetheless, Defendants are entitled to discovery not just to ascertain the reasonableness of Plaintiff's mitigation efforts but also to ascertain whether the previously withheld documents support—or dispel—any other theories or claims for relief.

[5] Plaintiff argues that Defendants' failure to take corporate depositions before an earlier self-imposed deadline shows lack of diligence. ECF No. 29 at 13. Plaintiff insists there was ample time for Defendants to conduct discovery, yet Defendants never challenged the sufficiency of Plaintiff's responses. *Id.* Plaintiff never explains how a lack of diligence in unrelated matters is relevant to the Court's Rule 56(d) inquiry. Nor does Plaintiff assert that Defendants' discovery requests were

sufficient, and it was never required to disclose its lease negotiations with Church's, because "Defendants did not seek any documents or communications related to lease 'negotiations.'" *Id.* at 17. Instead, Defendants only sought disclosure of Plaintiff's "*efforts* to mitigate damages," not "negotiations." *Id.* (emphasis in original). Even if Defendants did seek documents on negotiations, Plaintiff would have objected and refused to produce anything regardless, as "such a request would have been unduly burdensome" and "implicate privileged and confidential materials." *Id.*

Plaintiff's argument thus boils down to whether "efforts" to mitigate damages includes "negotiations." It is undisputed that Defendants asked Plaintiffs to identify and produce documents pertaining to "all efforts . . . to comply with the landlord's statutory duty . . . to mitigate damages." ECF No. 21-3 at 3-4. Yet Plaintiff never identified any offers from or negotiations with Church's. *See* ECF Nos. 21-4 at 6-7, 21-5 at 7. Plaintiff cites no authority for the proposition that "efforts" is a term of art that excludes "negotiations," or that lack of absolute precision in discovery requests will absolve a party of the duty to disclose relevant information. *See* FED. R. CIV. P. 33; *Odeh v. City of Baton Rouge*, No. CV 14-793-JJB-RLB, 2016 WL 1254361, at *9 (M.D. La. Mar. 29, 2016) (noting Rule 33 requires interrogatories to be "sufficiently definite, clear, and concise, and they must adequately advise the

---

untimely or vague. Moreover, such arguments are premised upon Plaintiff having fully responded to Defendants' interrogatories and requests for production, which is not supported on this record.

interrogated party of the information requested," although "technical precision in the phrasing of interrogatories is not demanded" (quotations omitted)).

Nor does Plaintiff suggest that it misunderstood Defendants' requests. To the contrary, Plaintiff's initial disclosure statement identified "documents relating to Plaintiff's efforts to mitigate damages" as a category of documents in its possession that would be used to support its claims. ECF No. 21-2 at 5. Plaintiff's supplemental response disclosed that it had "received an offer" for one of the vacant properties, which is why it only advertised 23 of the 24 properties. ECF No. 21-5 at 7. By so representing, Plaintiff evidently understood that "efforts" to mitigate required the disclosure of any lease offers it received. Yet by providing an incomplete answer, Plaintiff improperly implied that no other lease offers had been received. *See* FED. R. CIV. P. 37(a)(4) (noting where a response to an interrogatory is "evasive or incomplete," it "must be treated as a failure to disclose").

This kind of gamesmanship is wholly improper under the Federal Rules of Civil Procedure. *See Hernandez v. Results Staffing, Inc.*, 907 F.3d 354, 363 (5th Cir. 2018) ("Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case." (quotation omitted)). Plaintiff knew the replacement lease would be relevant to its damages and efforts to mitigate, which is why Plaintiff attached it as an exhibit to

the motion for summary judgment. *See* ECF No. 19-13. Plaintiff concedes that it never notified Defendants or supplemented its interrogatory responses after signing the replacement lease on December 31, 2023. *See* ECF Nos. 21 at 1; 29 at 20. The Court therefore finds that Defendants diligently pursued the discovery of pertinent evidence, which Plaintiff failed to timely disclose. A continuance under Rule 56(d) to conduct additional discovery before requiring a response to a motion for summary judgment is appropriate in such situations. *See Holcombe*, 2018 WL 4908266, at *3.

## Conclusion

As stated on the record at the status conference on April 25, 2024, and for the reasons stated above, Defendants' motion to continue, ECF No. 21, is **GRANTED**. The Court thus **DEFERS** consideration of Plaintiff's motion for summary judgment, ECF No. 19, until after the completion of supplemental discovery.[6]

**IT IS SO ORDERED.**

Signed on May 14, 2024, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[6] Defendants further request a new scheduling order and an extension of discovery under Rules 16 and 37. *See* ECF No. 21 at 15-19. Because the Court grants the requested continuance under Rule 56(d), Defendants' requests in the alternative are **MOOT**. Plaintiff's deadline to begin rolling production of the requested discovery and next steps are set forth in the Court's Minute Order for the status conference held on April 25, 2024. *See* Minute Order, ECF No. 32.